IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 18-CV-66

| | | |
|---|---|---|
| SHELLY STEPHENS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | (Jury Trial Demanded) |
| YOUTH VILLAGES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

NOW COMES Plaintiff Shelly Stephens, by and through undersigned counsel, and alleges as her

Complaint against Defendant Youth Villages, Inc., as follows:

INTRODUCTION

This is an action for disability discrimination pursuant to the Americans with Disabilities

Act and the Rehabilitation Act. Ms. Stephens is an individual who has the education and

experience to counsel foster care youth. She is also a person with quadriplegia who relies on a

personal assistant for transportation. This action is being brought because Youth Villages Inc.

has refused to hire Ms. Stephens based on her use of a personal assistant.

JURISDICTION AND VENUE

1.  This action is instituted pursuant to Title I of the Americans with Disabilities Act of 1990

    (ADA), 42 U.S.C. § 12111 *et seq*., and authorized by 42 U.S.C. § 12117(a), and Section

    504 of the Rehabilitation Act of 1973 (the Rehabilitation Act), 29 U.S.C. § 794a.

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 (federal question) and

    1343 (civil rights).

3.  Declaratory, injunctive, and further relief are authorized by 28 U.S.C. §§ 2201 & 2202.

4. Venue is proper because a substantial part of the actions and omissions of which Plaintiff complains occurred in this District, 28 U.S.C. § 1391(b), and Plaintiff is a resident of the District, 28 U.S.C. § 1391(d).

5. Ms. Stephens has properly exhausted administrative remedies. On May 22, 2017, she filed a Charge of Discrimination (Charge No.430-2017-01585) against Defendant with the Equal Employment Opportunity Commission (EEOC). The Charge was filed within 180 days of the violation. On December 21, 2017, the EEOC issued Ms. Stephens' right to sue letter. This suit is timely filed within 90 days of that notice.

PARTIES

6. Plaintiff Shelly Stephens is a citizen and resident of Cherokee County, North Carolina.

7. Ms. Stephens has quadriplegia; she has limited use of her arms and no use of her legs and torso.

8. Ms. Stephens cannot stand, walk, or perform certain manual tasks, such as turning a steering wheel, because of her quadriplegia.

9. Youth Villages, Inc. (Youth Villages) is a not-for-profit corporation registered with the North Carolina Secretary of State with offices located in Asheville, Boone, Charlotte, Concord, Greensboro, Greenville, Louisburg, Pinehurst, Raleigh-Durham, and Waynesville.

10. Youth Villages employs hundreds of employees and operates in twelve states and the District of Columbia.

11. Youth Villages participates in business and commercial activities. It provides adoption, foster care, treatment, and counseling services for a fee.

2

12.    Youth Villages is a provider of Medicaid services and receives federal funding as part of its business activities.

FACTS

**Job Qualifications**

13.    On or about January 23, 2017, Youth Villages advertised a job opening for a Lifeset/Transitional Living Specialist (Transitional Living Specialist) in the counties of Clay and Cherokee, North Carolina.

14.    A Transitional Living Specialist works with youth, between the ages of 16-22, to help them transition out of foster care and into adulthood. A Transitional Living Specialist is required to form therapeutic relationships with the transitioning youth, their families and friends, and other key community stakeholders to help them maintain stable and suitable housing, avoid criminal activity, participate in an educational/vocational program, and develop the life skills necessary to become a responsible citizen.

15.    Youth Villages stated the job requirements for a Transitional Living Specialist were a bachelor's degree in a social services discipline (masters preferred), experience with the transitioning youth client population, experience in a clinical or case management setting, strong organizational skills, written skills, verbal skills, oral skills, attention to detail, ability to manage multiple priorities, ability to maintain a flexible schedule, and basic computer knowledge.

16.    In its January advertisement, Youth Villages did not state that the ability to drive oneself was a job requirement to be a Transitional Living Specialist.

17.    Ms. Stephens has the requisite education for the position. She has a Bachelor's degree in Psychology and is five credits short of a Master's degree in Human Relations.

18. Ms. Stephens has relevant experience for the position. She has worked with children in the foster care system and children who have experienced domestic abuse, child abuse, parental substance abuse, and parental incarceration. She was once a foster child herself.

19. Ms. Stephens has worked in clinical and case management settings. She has tutored, counselled, and mentored children displaying behavioral problems; she has worked within a treatment team; she has developed plans for clients and monitored the outcomes; and she has counselled clients on how to increase their independence and develop their life skills.

20. Ms. Stephens has appropriate work skills. She has strong organizational skills, written skills, verbal skills, oral skills, attention to detail, and ability to manage multiple priorities. She has served on multiple boards, commissions, and committees, and has extensive public speaking experience.

21. Ms. Stephens is able to maintain a flexible work schedule. She does not need to work a traditional 9 to 5 workday.

22. Ms. Stephens has the requisite knowledge of computers. She regularly uses computers and is familiar with Microsoft Office Suite, Outlook, database navigation, and the internet.

23. While not a stated job requirement, Ms. Stephens is familiar with community stakeholders in Clay and Cherokee counties, which would be a significant asset in facilitating the transition of foster youth to adulthood in her local community.

**Job Application and Interviews**

24. On or about January 24, 2017, Ms. Stephens applied with Youth Villages to be its Transitional Living Specialist in Clay and Cherokee counties. Ms. Stephens disclosed in her job application that she did not have a driver's license.

25. Ms. Stephens interviewed by phone for the position with Clinical Supervisor Theodore Windish. Ms. Stephens disclosed her disability, discussed her relevant work experience,

4

highlighted her relationships with community stakeholders, and answered hypotheticals posed by the interviewer.

26. The Clinical Supervisor forwarded Ms. Stephens' application to Regional Supervisor Theresa Jurgensen.

27. On or about February 24, 2017, Ms. Stephens interviewed in person with the Regional Supervisor. Ms. Stephens' quadriplegia was obvious due to the visible nature of her disability. She again discussed her relevant work experience, highlighted her relationships with community stakeholders, and answered hypotheticals posed by the interviewer.

28. Ms. Stephens disclosed that a driver would assist her with work-related transportation. She did not ask or expect the company to pay for her driver.

29. The Regional Supervisor did not ask about costs or indicate any concern with the use of a driver during the interview.

**Job Rejection**

30. On or about March 2, 2017, the Regional Supervisor contacted Ms. Stephens and told her she did not get the job because the use of a driver would violate the Health Insurance Portability and Accountability Act (HIPAA). Ms. Stephens was not previously made aware of this concern and is not aware of a formal Youth Villages policy prohibiting the use of drivers or other personal assistants.

31. Ms. Stephens requested Youth Villages give her driver the opportunity to sign a confidentiality agreement, but the Regional Supervisor refused the request because the company had already determined not to hire Ms. Stephens.

32. There were several ways for Youth Villages to both comply with HIPAA and permit the use of Ms. Stephens' driver. It could have added the driver to its workforce as a paid or

5

unpaid volunteer, *see* 45 C.F.R. § 164.530(b)(1); it could have obtained client consent for the release of personal information to the driver, *see* 45 CFR 164.502(a); it could have treated the driver as a business associate and had her sign a confidentiality agreement, *see Id.*; or it could have shielded the driver from learning any personal information about its clients.

33. Ms. Stephens' driver would have been willing and able to sign a confidentiality agreement or volunteer for Youth Villages, but the company did not explore these alternatives with Ms. Stephens or her personal assistant.

34. The Regional Supervisor said Ms. Stephens was otherwise a great candidate for the position.

35. On information and belief, Youth Villages did not hire anyone to fill the vacant Transitional Living Specialist position in Clay and Cherokee counties from the pool of job applicants to which Ms. Stephens belonged. It reposted the vacant job position in May and September of 2017.

**Job Description Altered**

36. On May 21, 2017, Ms. Stephens filed an EEOC Charge of Discrimination against Youth Villages.

37. After the Charge was filed, Youth Villages altered its job description of a Transitional Living Specialist by requiring job applicants to possess a driver's license, personal vehicle, and auto insurance.

38. Ms. Stephens remains interested in applying to be a Transitional Living Specialist but does not meet the additional requirements of the revised job description.

6

39. The ability to drive oneself is not an essential function of the Transitional Living Specialist job. The ability to travel is a function of the job, and Ms. Stephens can perform it with or without reasonable accommodation.

## FIRST CLAIM FOR RELIEF
(Title I of the Americans with Disabilities Act)

40. Ms. Stephens incorporates and re-alleges paragraphs 1 through 39.

41. Ms. Stephens is a person with a disability protected by the ADA. *See* 42 U.S.C. § 12102.

42. Ms. Stephens can perform the essential tasks of the Transitional Living Specialist job with or without accommodations and is a qualified individual. *See* 42 U.S.C. § 12111(8).

43. Youth Villages is a covered entity subject to Title I of the ADA. *See* 42 U.S.C. § 12111(2) and (5).

44. Title I of the ADA provides that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to its job application procedures and its hiring. 42 U.S.C.S. § 12112 (a).

45. Discrimination includes denying employment opportunities to a qualified applicant when the denial is based on the need of the entity to reasonably accommodate the physical impairment of the applicant, 42 U.S.C. § 12112 (b)(5)(A) and 29 C.F.R. §1630.9, and utilizing standards, criteria, or methods of administration that have the effect of discriminating on the basis of disability, 42 U.S.C. § 12112 (b)(3)(A) and 29 C.F.R. § 1630.7.

46. Reasonable accommodations may include modifying policies and practices in order to permit an applicant or employee the opportunity to use a human aide. *See* 42 U.S.C.S. § 12111(9); 29 C.F.R. pt. 1630 app. § 1630.2(o).

7

47. To determine the appropriate accommodation, it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. 29 C.F.R. § 1630.2. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. *Id.*

48. Youth Villages discriminated against Ms. Stephens when it denied her employment based on her disability by refusing her the use of her driver as a human aide.

49. To the extent permitting Ms. Stephens to use a driver was an accommodation, it was reasonable, and Youth Villages discriminated against her by treating the use of her driver as an unreasonable accommodation.

50. Youth Villages discriminated against Ms. Stephens when it failed to engage in an appropriate interactive process regarding her need for assistance with transportation. It failed to determine the financial cost of potential travel accommodations, if any, to the company. And it failed to discuss possible solutions to its HIPPA-related concerns with Ms. Stephens before denying her employment.

51. Youth Villages is discriminating against Ms. Stephens and similarly situated individuals in regard to the standards, criteria, and methods of administration it uses in its hiring process. Its HIPAA rationale and driving-related requirements have the effect of screening out qualified applicants in the hiring process who use personal assistants or other accommodations because of their disabilities, including Ms. Stephens.

52. Youth Villages is also discriminating against Ms. Stephens and similarly situated individuals in regard to the standards, criteria, and methods of administration it uses in its application process. The newly revised job description for Transitional Living Specialist

includes non-essential job functions intended to screen out otherwise qualified applicants who cannot obtain a driver's license because of their disabilities, including Ms. Stephens.

53. Ms. Stephens was harmed and continues to be harmed by Youth Villages' actions and has suffered damages, including lost wages and emotional pain and suffering, as a result of Defendant's discriminatory practices.

## SECOND CLAIM FOR RELIEF
(Section 504 of the Rehabilitation Act)

54. Ms. Stephens incorporates and re-alleges paragraphs 1 through 53.

55. Ms. Stephens is an individual with a disability protected by Section 504 of the Rehabilitation Act. *See* 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

56. Ms. Stephens can perform the essential tasks of the Transitional Living Specialist job with or without accommodations and is a qualified job applicant. *See* 45 C.F.R. § 84.3(l)(1).

57. Youth Villages receives federal financial assistance from the Department of Health and Human Services and is subject to Section 504 of the Rehabilitation Act and its implementing regulations. *See* 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

58. Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving Federal financial assistance. *See* 29. U.S.C. § 794(a) and 45 C.F.R. § 84.11.

59. Discrimination includes denying employment opportunities to a qualified job applicant when the denial is based on the need of the entity to reasonably accommodate the physical limitations of the applicant, 45 CFR § 84.12(d), and utilizing selection criteria that screen out or tend to screen out applicants on the basis of disability, 45 CFR § 89.13(a).

60. Youth Villages discriminated against Ms. Stephens when it denied her employment based on her disability by refusing her the use of a driver as a human aide.

61.   To the extent permitting Ms. Stephens to use a driver was an accommodation, it was reasonable, and Youth Villages discriminated against her by treating the use of her driver as an unreasonable accommodation.

62.   Youth Villages discriminated against Ms. Stephens when it failed to engage in an appropriate interactive process regarding her need for assistance with transportation. It failed to determine the financial cost of potential travel accommodations, if any, to the company. And it failed to discuss possible solutions to its HIPPA-related concerns with Ms. Stephens before denying her employment.

63.   Youth Villages is discriminating against Ms. Stephens and similarly situated individuals in its selection criteria. Its HIPAA rationale has the effect of screening out qualified applicants in the hiring process who use personal assistants or other accommodations because of their disabilities, and its newly revised job description for Transitional Living Specialist includes non-essential functions intended to screen out qualified applicants who cannot drive because of their disabilities, including Ms. Stephens.

64.   Ms. Stephens was harmed and continues to be harmed by Youth Villages' actions and has suffered damages, including lost wages and emotional pain and suffering, as a result of Defendant's discriminatory practices.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

1.   Declare that Defendant's actions, policies, procedures and practices as alleged herein violated Title I of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

2. Enjoin Defendant from further violations of the ADA and Section 504, including requiring Transitional Living Specialist job applicants to possess a driver's license, personal vehicle, and auto insurance;

3. Enter judgment in Plaintiff's favor in an amount encompassing back pay, compensatory damages, and placement in a Transitional Living Specialist job or front pay;

4. Award reasonable attorney fees and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b);

5. Afford Plaintiff a trial by jury on all issues so triable; and

6. Grant such other, further, or different relief as the Court deems to be just and equitable.

This the 14th day of March, 2018

Respectfully submitted,

/s/ Christopher Hodgson

Christopher Hodgson
chris.hodgson@disabilityrightsnc.org
N.C. State Bar No. 50135
Lisa Grafstein
lisa.grafstein@disabilityrightsnc.org
N.C. State Bar No. 22076
DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax: (919) 856-2244

ATTORNEYS FOR PLAINTIFF